2011, 1449, LINGAMFELTER v. KAPPOS. I take it that the apathies are splitting their time. Mr. Krauss, ten minutes, and Mr. Bauer, five minutes. Is that correct? That's correct. Very well. Mr. Braswell. Do you preserve three minutes for a bottle of liquor? Yes, Judge. May it please the Court. I'm Dennis Braswell, counsel for patent owner C. Brown LINGAMFELTER, who is sitting here at the end of the counsel's table. Also with me is Dan Chapman, co-counsel. This case is about a narrow patent that covers one of the most successful packages in recent packaging history. This is often referred to as the fridge pack or fridge mate package. This LINGAMFELTER package is the industry standard 12-pack paperboard package used for soft drinks and used by companies such as Coke and Pepsi. The invention claimed and described in this patent is an elegant, easy-to-understand improvement over the prior art. But this elegance has, not surprisingly, made it the victim of pernicious hindsight claim reconstruction by the Patent Office. And while I'm sure that most patentees claim of improper hindsight reconstruction, this is a textbook case of it. Now, the important contribution of this claimed invention is combining rows and columns with a top, front, corner opening feature. And while these elements were individually found in the prior art, they were never combined, and it is a crowded area of art. Our gray reply brief provides a montage of representative prior art patents, and these patents go back 50 years. If you had the rows and columns, take out the rows and columns limitation, either expressed in some claims or implied, as you say, in others, is Ellis sufficient to render either anticipated or obvious in this patent? If the claims just stood on the top, front, corner opening feature, yes, Ellis has that element. It is the combination of the rows and columns with that top opening feature that is the novel and inventive contribution to the art. But isn't the fact, as you say, that this is such a crowded field, isn't that part of your problem with respect to the issue of obviousness, that there are so many different patents in the field or prior references that can be combined? Well, actually, it goes to show how this was the needle in the haystack that no one could hit upon. There were lots of designs all around this area, but one of the things, and we've lived with the FridgePak now for 12 years. Everybody is very familiar with it, and that's one of the problems. If you look at a reference like Ellis, and it looks like, well, gosh, it's just a small change. Let's change the staggered arrangement of Ellis into a row and column arrangement. But that was not obvious if we cast our minds back 12 years ago to the time of the invention. And some of our evidence from Dr. Singh, our packaging expert, shows that actually one of the problems in this area is that we're talking about carrying heavy cans with paper. And so integrity and strength are very significant issues. And whenever you start making open feature, which comes from perforations or weakened areas, package integrity is very important. And so designers made openings just big enough to do the job, and they very often avoided openings on the top wall unless there was a very specific reason for having that opening. And so the kind of common wisdom, even teaching away in this area, was teaching away from the combination of a top feature with rows and columns. Can I move you towards the process issues you raised? The first one raised in the Blue Brief, for example, is with regard to secondary consideration and whether or not the evidence, the declaration from the other side were properly admitted. Yes, ma'am. We call this the ultra-various issue. We believe that the statute, the patent statute is very clear, Congress was very clear in establishing inter-parties re-examinations. And it said that inter-parties re-examinations would be based on prior art printed publications and patents and nothing more. And so the Patent Office has no authority to receive or consider any evidence other than prior art patents and printed publications. You're also making the 314 argument, right? I mean, you're guiding us to 314 in the written comment. That's exactly right. That's not an argument you made before the Board, is it? Well, we've been back to the Board twice. The first time through, we did not. And then the second time around, we did make the argument. On the 314, when I read through your submission to the Board, I thought it was just relying on the other inter-parties, the 311 and so forth. Well, what we were arguing was that written comments do not allow submission of evidence. That's what you made to the Board on reconsideration? Because I didn't see it in your reading through your submission. I saw your references to other matters, but not to that. But you're saying that you made that explicit argument to the Board? And if you'd like, maybe on my rebuttal time, I'll find a specific reference to it. Because I'm looking at the document at 3217 is where I see the challenge to the Board, and I could have very easily missed it. It was at the very end of our submission. Does harmless error in your – I mean, even if you assume you're right on the legal question of who's got authority over who you want, does harmless error apply here? In other words, if we were to conclude that, yeah, you're right, but we look at the evidence that was submitted and on balance, either it's clear to us that the Board would have reached the same conclusion with respect to secondary considerations, or at least we think that conclusion would have been reached. Does harmless error not apply? No, we don't think it's harmless error. We think that the evidence that was submitted by the requesters was heavily relied upon by the Board in reaching their decision regarding secondary considerations and claim construction. Just as an example, there were two affidavits that were submitted that I think highlight the problem. One was from an employee of Coca-Cola, Ms. Aguila, and she testified that through some internal consumer studies, they found that reasons for the success of the package related to its slim shape, to its basket feature, to issues like that. Well, this was very significant because the Patent Office and the Board below found those reasons to be the reasons that drove success as opposed to the claim dimension, and so they heavily relied upon it in their nexus or their finding against nexus. Besides the basket feature, all of the other stuff was included in your side's affidavit, declaration, was it not? And there's an amount. I mean, the actual amount of money was, I think, in the other side's affidavit. Yes, but there were, for example, the Board relied on and it enunciated several pieces of evidence that it thought were important in reaching its decision on the nexus issue. And it talked about the slim shape, which we agree the slim shape is an important feature to driving success, although keep in mind the slim shape is rather... The slim shape being the 2x6, 3x4? Yes, Judge. But remember that the 2x6, first of all, it is in rows and columns. It is a row and column arrangement, so it's covered by the claims and commensurate in scope with the claims. But then they went on to say, well, here's another reason that we think the package was successful. For example, the ability to receive inserts. Inserts are like a promotional item, like a DVD. The Board elevated those kind of pieces of evidence above even the importance of the top front opening feature. But so is your point about harmless error in response to Judge Probst, is your point that it's because they focused, they used this evidence to reach factual conclusions, or is it bigger than that? Well, first of all, we believe it's an ultra-various act, that it's beyond their statutory authority to even having received the information. But in considering it, they relied upon it very heavily, and so it's not just harmless error. And we think that that's not the only error in, evidentiary error that was made. Why can't comments, I'm sorry. No, I just, to answer the question, it is an evidentiary issue, but that evidentiary issue feeds this ultimate legal conclusion of obviousness and nexus. Why can't the word comment, or comments, I guess it is, encompass evidence? Well, for a couple reasons. First of all, the plain ordinary, Congress didn't provide a definition for it, and so case law provides that we look at the ordinary meaning of the word. The ordinary meaning of written comments doesn't embrace evidence. Congress knows how to use the word evidence. As an example, if we look at the new American Events Act, which throws out inter-parties re-exam and replaces them with an inter-parties review proceeding, it has a, rather than a request, now there's a petition. And the petition specifically, Congress specifically said that the petition can be based on prior art printed publications and patents, just like in the existing statute. But then it also specifically adds a second category of evidence, like affidavit declaration testimony and expert testimony. No, but what is your position on the limitations of written comments? You're not suggesting they couldn't address secondary considerations. You're saying they could address it, but they couldn't do what? Could there not be a sworn declaration? There could not be. So the idea is that they could have said exactly what they said, as long as they didn't say affiant hereby swears. Well, what we're saying is that the written comments can be very effective, and they can look at our evidence and say, well, that evidence is wrong. And they can come from an expert, presumably, right? They could be coming from an expert. However, to the extent that they're bringing in evidence that's not based on written prior art patents or printed publications, they just can't do it. And, for example, the Koch affidavit. You said they could say it's wrong, but saying it's wrong without explaining why. How can they say it's wrong, if that's what's contemplated under written comments, without saying because the economic data they relied on is absolutely incorrect, and here's the right stuff? Well, what they can do is point out deficiencies in what we may have submitted, or legal problems, or with regard to prior art, maybe something that's been missed. But as far as rebutting it with their own evidence, no, they cannot. What if it's in the public domain? What if it's just stuff that you would take publicly? Well, it would have to be, at the lowest case, it would have to be based on a prior art printed publication, or a prior patent, because that's what Section 301 requires. But you do acknowledge that the written comments don't have to be with respect to prior art. The written comments can address secondary considerations. That's correct. That's the question in play. That's correct. But once you, if you go down the path of construing written comments, contrary to the way Congress defined it in the new statute, or they didn't define it, but now they specifically added that evidence can be provided, which I think is very strong evidence that Congress knew what they were doing when they first established the inter-parties re-exam. But if you go down that path and say, okay, let's let written comments include evidence, such as that submitted by Koch or Miller in this case, we have no discovery. The patent holder has no discovery and no way of testing that evidence. And that is the due process problem that is raised. Of course. Can I just follow up? Sure. I mean, the Patent Office, even though they don't delve into this in any great detail, it seems like at least the emphasis they place is on 1.81, the process that you, there's a process in place for you to challenge evidence that comes in that you don't think is appropriate. And we're talking about evidence that came in before the examiner, not just before the board. Why aren't they right about that? Why isn't that the appropriate procedure that one would use? And then arguably an appeal through the APA to the district court and not through the board proceeding. Well, we could. I mean, that's a possible avenue. But it's not required. The jurisdictional statutes that provide jurisdiction to this court, sections 141 and 142. By the way, we will preserve your rebuttal time. Okay. Thank you. Don't worry about it. Okay. Thank you. I appreciate that. But the jurisdictional statutes that provide appellate jurisdiction here allow us to appeal any decision adverse to patentability. Certainly that includes underlying factual issues that drove that issue. And so while I think, yeah, we could have gone to the district court and sued the patent office, asking for an injunction to stop reviewing this evidence. We could have filed a petitioner. But we have no obligation to. And we're supposed to construe the effects of whether or not it relates to patentability. I mean, the examiner, somebody complains because the examiner didn't give the application sufficient consideration. They didn't spend any time on it and so forth. Is that the kind of thing that can be raised before the board and ultimately before us on appeal? Well, I think so. And I think that would be under, for example, a substantial evidence standard of review. You know, if we said, hey, I don't think the patent examiner did a good job evaluating this evidence. And, in fact, that's part of our case. And then the board has procedures. There are regulations and then there's the MPEP. Are we supposed to defer to those under some level of deference or are we supposed to just review anew? Well, in this particular case, the MPEP and the Patent Office has not given an interpretation of written comments. They have not provided a reasoned interpretation of the term. You know, had they done that, then Chevron deference might be due if it was a reasonable interpretation. But the problem with allowing evidence such as this Koch and Miller evidence, and who, by the way, are not parties to this proceeding, and so they're not subject to the estoppel provisions, and yet there's a pending lawsuit in federal district court where they're the parties. And so they're trying to use the re-exam proceeding by putting evidence in as an end-around and not be subject to an estoppel provision. And that's particularly egregious. But that kind of evidence is we're not able to test it through discovery. The Patent Office provides no appropriate means for us to take discovery. And that's the due process question. The due process question is this. Is there a risk of an erroneous deprivation in our patent right? And there's a very high risk here. There are a lot of administrative proceedings, certainly in the federal system, in which both sides offer their submissions, evidentiary or otherwise, and the adjudicator decides which is more persuasive without there being either cross-examination or discovery. For better or for worse, is there an invention of relatively recent vintage, and it's certainly the way it's practiced these days. What is the due process problem with having a system in which each side presents its evidence and the adjudicator says, all right, I'll decide which I find more persuasive, as long as no one's going to jail? Well, of course, it does depend on the nature of the right that's being jeopardized. You know, if it's a First Amendment right or a right going to jail, of course, there's very significant due process concerns. If you're on the other end of the spectrum, say just looking at whether a student can be suspended for three days, then there's not a lot of due process required because there's not a lot at stake. But I contend we're much closer to the significant side of that spectrum. This is a potentially very significant economic patent. You've got big players in the market who have an economic interest in this patent, and they're submitting evidence that we can't test. I mean, this is a subjective test on why consumers like this patent. I would love to take a deposition of that declarant and say, may I look at the results? May I look at all the answers? May I look at what packages you presented to these consumers? We really would love to test that. And if we don't have that right, there is this real significant risk that there'll be an erroneous deprivation of the right. You have a right, of course, to respond to the comments and the evidence, right? Right, but we have no ability to test it when they own the data, and it's not based on printed publications that we could objectively test. Okay, thank you. We'll hear from the other parties, and we will reserve your full rebuttal. Thank you. Why don't we extend the time to the extent necessary for Mr. Krauss by one minute and Mr. Bauer by one minute. Mr. Thomas, would you like to speak? Thank you, Your Honor. May it please the Court? Just picking up where we left off, it's our position that this issue of ultravirus has been waived two times over. I looked at the same part of the appeal brief to the Board that Judge Post looked at, and I can't find a reference to Section 314. I believe that's new in this appeal. Well, that's one question, but the other question is you make, I think, a broader waiver point. And isn't that diminished here by the fact that the Board actually considered and dealt with this argument?  I don't think it makes a big difference. The argument the Board dealt with was 301 and 311, and you can kind of look at those on their plain terms. They have to do with the institution of reexamination proceedings or if the rejection was based on that particular evidence. And the Board easily said neither of those apply. But the normal rule is the Board shouldn't be considering the PTO's procedural questions. Did the Board improperly consider? Is that section of the Board's analysis improper? I mean, is that why it's waived? I think in that part of the Board's decision, that answer is so obviously correct. They cited the wrong provision that it's not really a problem for the Board to have considered it, but I think we at the Patent Office would prefer that they hadn't even gone out to that point. But that's the point. You prefer it because the procedure for petitioning the Director or the option to sue under the APA, those are options. The 1.181 says may. It doesn't say that you have to. There's no exhaustion requirement in there. It's just an option that can be taken. But that doesn't mean that they can't object in the course of the proceeding itself. Well, they were in the course of the Board proceeding as opposed to before the examiner. Right. You say in your brief that what they should have done is petition the Director to say, well, we're being treated improperly here, and if they didn't like what the Director said, to sue under the APA. But the very provisions that you point to that say that they can petition the Director are permissive. They do not impose an exhaustion requirement, do they? I think they do when you're talking about procedural. Which provisions in particular? I have exactly the same problem that Judge O'Malley does. I've read the citations to the MPEP and to 1.181, and I'm not seeing anything in any of those citations that says must as opposed to may. Obviously, it's permissive if you want to object to something that's happened in the examination proceeding. Well, that's not what we normally mean by permissive. Permissive if you want to have a right to be heard. But what your argument is, and specifically you say, the issue is outside the Board's limited jurisdiction to review patentability determinations, and I didn't see any of your citations supporting that pretty conclusive sort of proposition. I saw 1.181, which is not very, it certainly isn't conclusive in the sense of you must or you lose. Right? Am I missing something? You're not, I admit the brief didn't contain all the citations that might have, one that could be of interest is 37 CFR 41.31C, and I'll just read it in its entirety just so you have it in front of you so we can talk on the same page. And this is the Board procedures 41.31C. An appeal when taken must be taken from the rejection of all claims under rejection which the applicant or owner proposes to contest. Questions relating to matters not affecting the merits of the invention may be required to be settled before an appeal can be considered. So, in other words, our preference, our strong preference, is that the Board be limited to questions on the merits of the invention. There's a big difference between a strong preference and a jurisdictional prohibition, isn't there? Well, it's reflected in the NPEP in the sections we cite. Well, let's investigate that. Which section of the NPEP and what language from that section says this is jurisdictional? I looked at it and maybe there's something in there, but I didn't see it. They don't say it's jurisdictional, but they make it clear that when you're going to the merits of the invention, questions like obviousness, anticipation, section 112, those go to the Board and procedural questions governing examinations. So the practical impact here is that you would have two different lawsuits. One is they have to go to district court and argue that evidence was considered that shouldn't have been considered that goes to an obviousness determination that we are reviewing and we can't review the facts. We're supposed to then just accept the proposition that every piece of evidence that you considered is legitimate? What they should do when the evidence that they have an objection to comes in, they should object at that time. That would preserve the objection. Re-examination is supposed to be done with special help. Object how, though, through a lawsuit in district court? First get a final agency petition decision. That would give the agency an opportunity to make a final decision on that question, to which we would then get deference, and that would allow us to consider all the facts and do a statutory interpretation of all the relevant statutory provisions. And then, yes, we would do that final petition decision, and the way to challenge that is under the Administrative Procedures Act. Can I just get some clarity on what the director's position is? I mean, we've had a lot of words like may and should and so forth, but is it your view that this is outside the board's jurisdiction to consider these questions? I can't say it's absolutely outside the board's jurisdiction. Well, that's what your brief said, so that's a little problematic, right? I mean, so are you retracting what your brief said? You say so it's your view now? I'm thinking only on the facts of this case. If an issue is raised to the board and we see various, you know, I agree with you there are places where things are permissive. Maybe we need to straighten out our board rules, but it's certainly the Patent Office's position that we shouldn't have these examination procedural questions decided by board panels. Board panels are expert judges in the law of obviousness, anticipation, et cetera, as well as in the technology. Again, you used the word shouldn't. Is that because they're precluded as a matter of jurisdiction or is that because you prefer it makes more sense to have it work that way? I don't disagree with the latter. I'm just not seeing the basis for the former. Okay. Standing here, I apologize. I can't necessarily defend the absolute jurisdictional point. I think the best we have on that is what we say in the MPEP and also the common sense point. What about the merits of the question of whether comment encompasses evidence? As you saw, we didn't consider that. I agree. That was conspicuous to the evidence. But I think the requesters make a very compelling point. If the PTO has to make that. Let me just put you on the spot. What's the PTO's position with respect to that issue? Because the fact that you didn't address it in the brief made me think, well, maybe they don't embrace the position taken by the requesters. The PTO's position as reflected in our practice from day one of inter-parties reexamination is to accept affidavit declarations from third parties in inter-parties reexaminations. I think that's something that the PTO assumed, but I agree that position is not reflected clearly in a rule. We can see it implicitly in the MPEP, but I submit that's more or less because we thought it was obvious. That's the way we've been doing business all this time. But isn't it telling that in the AIA there was specific reference to acceptance of affidavits and in return provisions for discovery to address things like affidavits? Doesn't that reflect the belief that under the current law those things weren't authorized? I think it certainly reflects the belief that discovery was not authorized. That would be an extension of the inter-parties reexamination proceeding. But a specific reference to affidavits that doesn't exist under the prior law is telling, isn't it? Well, it's discovery related to affidavits. I think when we look at the prior law we think about what the patentee himself is allowed to produce in an ex-parte examination or inter-parties reexamination. They're allowed to produce declaration evidence. It only makes sense, especially if you're going to have a copy of it. I would say that it doesn't make sense for any number of reasons, including that there's not a similar duty of candor on that side as there is on the patentee. Doesn't that matter? I think there are any number of checks to prevent inaccurate and false affidavits from being submitted. Attorneys are not permitted to do that. There's the possibility of being subject to discipline. There are the penalties of perjury. And again, the evidence in this case and really in every case is mostly very secondary. What the examiners are looking at are the prior art references and making a determination. In this case, it's quite easy to make that there's an anticipation problem and obviousness problems as well. Can I take you back just briefly to where you started, which is on the waiver question? Let's leave aside for a moment whether or not they raised 314 versus 311 in their submission to the board. Once the board considers and deals with the question, isn't kind of your waiver position gone or not? At this point, again, the board only dealt with the questions of 301 and 311. Yeah, but I asked you to leave that aside. Let's assume they had raised the 314. I think that's probably right. When we come here to defend the board's position, we are adopting the board's position as the director's position, as the PTO's position. We have this interesting case here where they've waived half the argument and we're reluctant to defend half of the decision, but in any event. I don't think in your brief, did you make the draw the distinction between 311 and 314? I don't believe we did. I think the requesters made that. You just broadly were saying it was waived, even though it had indeed been raised, at least something had been raised and dealt with by the board. Yes. I'm picking up on the comment that you made, that Section 314 was not raised to the board. I think it's fair to say that they can't come to this court without having gotten a decision from the PTO on what 314 means and now ask for something about 314 for the first time. Leaving that aside, though, the argument you made in the brief with respect to waiver was a different argument, right? That's correct. And you're disavowing that now, saying that once the board deals with it, the broad waiver issue is out the door. I suppose that's fair. I just reiterate that the board didn't deal with it in its entirety here, and that's part of the problem. That's why, again, the strong preference is that procedural issues result in PTO final determinations from the director as opposed to a board panel. We have occupied you with procedural questions. They're important, and I think it's been useful, but you haven't had an opportunity to say anything on the merits. Very briefly, if you would like to touch on the high points of what you would have to say on the merits if you choose, In a couple minutes, the high points are this is a carton for containing sodas, and the main innovation here is they've cut off the top front corner. We have exactly that in the Ellis reference. The Ellis reference anticipates several of the claims, and then if you start looking at, oh, well, maybe Ellis doesn't teach the columns, we have multiple references that teach the columns, and the Farquhar, I'm sorry, and the prior art, and they're all, the columns is well established to be in the prior art, and then there's really, it becomes simply a matter of selection in this art. We're simply selecting well-known features in the packaging, art, a handle, a cutout on the top, the columns. Under this court's cases, both before and after KSR, that's the sort of design choice that's obvious. Some of your obviousness determinations, though, I mean, there are places where you have to put together five or six or seven references. I mean, the more references you have to lump together to try to say that it's obvious, the less it seems very obvious. I'm not sure I ever counted more than four, and even the fourth one was in the alternative, but it's really an artifact of the fact that there are multiple limitations. In other words, if we've got, if two or three of our references teach the box that they claim in one claim, they had a dependent claim to handle, we may need to bring in another reference, but that's simply another conventional feature of this kind of box that is perfectly subject to an obviousness determination. Very well. Thank you, Mr. Krause. We'll give Mr. Bauer, yes, an extra minute for Mr. Bauer. That's right. Thank you. Good morning. May it please the Court. Your Honors, the patent owner in this case, as spoke through his briefs and in argument today, has spent considerable energy directing your attention away from the core merits of patentability in this case. I'd like to pull your attention back to that because the rejections in this case are very sound, and particularly under a substantial evidence standard of review should be affirmed. Indeed, the patent owner does not challenge that all of the limitations in his claims are disclosed in the prior art. The only challenge that he has is whether there are sufficient reasons to combine or modify those references, and I submit to you that there are more than ample reasons in this record to affirm. One of the rejections I'd like to touch on is the obviousness rejection of modifying Imizado sidewalls. You may recall the Imizado reference is nearly identical to what is the preferred embodiment of the patent, except that the sidewalls of that carton are not modified. The opening is simply on the top and the front of the top corner. The Ellis reference, as has been acknowledged by Mr. Braswell, has exactly the opening that's claimed, however, including the opening on the sidewalls. Moreover, the Farquhar reference provides an explicit direction that one should, to improve the functionality of a carton, to be able to remove at least the first can from the carton, to open the sidewalls through score lines to create what are called ear portions. And as Farquhar teaches, the user can then, with the thumb and the forefinger, more easily grasp the ends of the cans to remove them. It even says that if you don't do that, it will be more difficult to remove the cans. So the combination of those references leads directly to the rejection number four, which touches on many of these claims. And it follows also directly from the Supreme Court's guidance in KSR. Now the patent owner's defense to that is that, well, the Imazato reference does not have any modification to its sidewalls, and therefore it teaches away from modifying those sidewalls. But the precedence of this court is that silence itself cannot be teaching away. Imazato says nothing about doing anything for or against with its sidewalls. And as the board properly noted, it would be self-evident that if a carton designer would have put score lines on sidewalls, that there would be a design tradeoff. Clearly, score lines would weaken the carton, which is the patent owner's position for teaching away, but there's a tradeoff for any functionality that might be gained. The Farquhar reference provides that express teaching that you get added functionality by putting score lines on the sidewalls of Imazato. So that rejection is solid and true. Secondary consideration. Why don't we, for the purposes of my question, not rely on the declarations that were submitted in the re-exam, but the other evidence relied on by the board? Well, let me address, Your Honor, the question with regard to essentially remedy, I suppose. Is it necessary to consider these declarations from the requesters? Our position is essentially you do not have to. The issue only arose... It is correct, is it not, that the board, at least with respect to the new basket issue, did rely on the declarations, and that was the only place where that argument to that issue was raised, right? It relied on the declarations with regard to evaluating commercial success. However, it acknowledged, and part of its analysis was that the patent owner had not brought forth a prima facie case of commercial success. It needs to have shown the nexus between its claims subject matter and what it's saying has been sold. And the patent owner has failed to do that. Indeed, I will point to you throughout the record, much of the information that's provided by the third-party requesters is already in the declaration from the expert or the patent owner. The issue about the fact that Coca-Cola had gone exclusive with this package that eliminated any consumer choice about what package they would buy, you can find that in the appellant's evidence at A706, A764. The fact that it's the general desirability of the 2x6 configuration that drives demand for this package, and that's what consumers like, that's in appellant's evidence at A2854. The fact that the carton was originated by Alcoa with the goal to be able to come up with a design that would be thin to fit between refrigerator cells, would be long to take up the so-called dead space in the back of the refrigerator, you can find that at A758 to 59. The fact that it's expensive to convert this package from a 3x4 to a 1x6 design in a manufacturing context up to a million dollars per bottling line, that's in appellant's evidence at A706. But the board didn't cite to those things. The board actually cited to the alternative evidence. So how are we supposed to know that the board believed that those things were persuasive just in the patent holder's evidence? Well, the board cited all of this evidence in its discussion of commercial success. My point is that this evidence, while it was in the requester's declaration, is also already in the appellant's declaration. So if you choose to not consider the requester's declaration on the issue of commercial success, reviewing the record under a substantial evidence standard, you will find more than substantial evidence simply in the appellant's proofs, combined with the board's conclusion that they had failed to raise a prima facie case. If that's an analysis that we can do from a district court determination, but if an agency, if we conclude that an agency acts in a way that's ultra-virus, do we have the authority to essentially do an independent analysis of the agency determination or the evidence before the agency? I would think that you have authority to rule that this issue is, if erroneous, is harmless error. If they act at ultra-virus in considering these declarations, a position that we do not take, by the way, clearly. But if you were to conclude that way, I think it's within your control to be able to determine that that is a harmless error that has happened. And based on the record that exists without that, that there is substantial evidence to affirm the decision from the office. You make the argument in your brief that the determination of whether comments encompass evidence is one that's subject to Chevron deference. I've looked at the evidence that you cite as evidence of the agency's position, which, as you know, under Chevron and its progeny, has to be fairly formal. It can't be casual. And I'm not seeing very much here. You've cited two provisions from the NPEP. The second doesn't seem to be very helpful because it's lumping together the requester and the patent owner and then referring to evidence under 37 CFR 1131 or 1132, which seems to harken back to the patentee, not the requester. So the reference to evidence there doesn't seem to be very helpful. The other one, NPEP 2667, which you're familiar with, does reference evidence in the context of what to do about an overly long brief. But that is a very offhand way to make a Chevron-deferrable statement from the agency, don't you think? I agree. I agree, Your Honor. Where is the Chevron platform, so to speak, to which we defer? Well, I think that you put your finger on the exact problem that you were addressing with Mr. Krauss. If the patent owner had followed the procedures that it should have and had petitioned this issue to the director and then brought it through district court, we would then have an official position that would be developed by the director, by the patent office, that would be analyzed by the district court. Deference would have been requested at the district court level. And as the reviewing court, you would have something to review. Although that would fall afoul, potentially, of the doctrine that you don't allow deference to a litigating position in a particular case by the party. In other words, you can't bootstrap yourself into Chevron deference by saying this is now our position. That might be a difficulty, yes, Your Honor. So if we're going to look at this as a... I mean, there are several ways to approach the merits of this question as opposed to the question of harmless error, waiver, and so forth. The merits, either we conclude that, well, comments either does or doesn't specifically incorporate evidence. That's one approach, to say it does or it doesn't. Or to say that we ought to take into account at some level what the PTO's position is with respect to that. And as for the second, I'm having a hard time figuring out how to weigh what we've got before us that bears on and tells us what the PTO's position is. So help me with that. The best I can help you with, Your Honor, is by inferring the conduct of the office. It's not simply our reexamination that submitted declarations. This is the standard practice for nearly all inter-parties reexamination. There's no evidence. I wanted to explore that with you. I mean, that may be true, but that would be, for example, something that would be very hard for us to say in an opinion. Because Mr. Bauer told us this, we believe it to be true. I mean, I'm sure you're credible, but you're not testifying under oath. I appreciate that, Your Honor. What Mr. Bauer has done is referred you to the public records of the Patent Office, which are open for everybody. One reference. I referenced you in our brief to the very first inter-parties reexamination in which declarations were submitted with the suggestion that if you go through and it's 95 slash such and such, it's all the serial numbers for inter-parties reexaminations that are open for public inspection. We'll see that. The problem we're faced with is that we're being asked by the appellant to basically set up an issue before an appellate court. There's been no opportunity for us to develop this issue below. They waited five years after declarations were filed, after they lost at the board, after on remand the examiner affirmed the decision of the board on new rejections before they raised their hand and said, well, wait a minute, there's been an ultra-virus problem here. So we have had no opportunity to be able to develop this issue. And I could have if I had the opportunity below to establish the course of conduct by the Patent Office in accepting third-party declarations. All right. Thank you. We will hear rebuttal in three minutes from Mr. Braswell. Thank you, Your Honor. Just three points I'd like to make. One is, Judge Prosser, just to address your question about whether we raised 314. I don't want to misstate it. I haven't been able to look back. But suffice it to say this. We raised the 301 and 311 issue and objected to the evidence that was submitted as written comments. And perhaps we didn't refer to 314. I'm not sure. But that's an entirely different issue. It does not make a difference, right? You're asking us here to construe 314. If that request, if that was never pushed before or brought before the board, is that a problem? Well, we think it was pressed in this way. We said that the only evidence that can be submitted is based on 301. And then we said evidence that came in as these written comments doesn't meet that standard. And whether we mentioned 314 or not, that was the substance of our argument. Because we were objecting to evidence that was written comments. The second point I would just like to address is nexus. The board did not find that we had established a nexus. And we briefed this issue, I think, very carefully. But the board framed the question wrong. They had a couple of quotes in their decision where they said, for example, we find that success may have been largely due to other factors and that the statements of praise for the package are at least equally directed to the general shape of the package. Now, these phrases, like at least equally directed to, implicit in that is, of course, well, we find that there were claim reasons for the success. But they seem to have an either-or mentality. Either the success was going to come from the claim invention or from something else. But that's not the law and that's not the normal case. The normal case, of course, is that there are many reasons for success. I mean, I think about a case of a great semiconductor, a brand-new microprocessor, that really is groundbreaking and extremely successful. Well, if you have a good salesman, he's going to sell more than a bad salesman. So the good salesman, of course, is partly a reason for the success. So the law, of course, doesn't require that we be the sole reason for success, just that we have a nexus, a legally sufficient connection. And we think if there's ever a case where we've established that, it's this case. And as one significant piece, and this is a reversible error by the board, is they ignored the Singh evidence that we submitted, the Singh Declaration. He is a packaging professor, an expert from Michigan State University. And he testified very clearly that the combination of rows and columns with a top-front opening feature was essential to the success. Not just that it was important or a nice idea, but that it was essential. And this was never addressed by the board. And it's not surprising, because I think it's not credible to deny that the rows and columns in combination with the top-opening feature are important. But once you admit that, then you've given us our nexus. And I submit that's why it's been ignored. But that ignorance of that, failing to deal with that piece of evidence, is a significant error. And then just finally, I would like to say this. This is not a KSR-type case or an Agra-type case, where there was an inevitable combination of two technologies, as the Supreme Court held in KSR, or like in the Agrasap case, where you're just replacing one switch for another switch. This was an elegant combination of interdependent features that came together in a way that had this success that is what the most successful package in recent history. And I think it's very distinct from those cases. Thank you. Okay. Thank you, Mr. Braswell. Mr. Krause, Mr. Bauer. The case is submitted.